UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

RLS ASSOCIATES, LLC,                   :         01 Civ. 1290 (CSH)

              Plaintiff,        :         MEMORANDUM OPINION
                                     AND ORDER
  -against-                               :

UNITED BANK OF KUWAIT PLC,             :

             Defendant.        :

-------------------------------------------------------X

HAIGHT, Senior United States District Judge:

This case currently presents two questions: (1) whether the complaint should be dismissed with prejudice, plaintiff having failed to post a bond for costs as ordered by the Court; and (2) the related but separate question of the identity of counsel, if any, who are obligated to represent plaintiff in the resolution of the first question.

## I. BACKGROUND

The Court's most recent opinion and order in this case, reported at 2005 WL 3312004 (S.D.N.Y. Dec. 7, 2005) ("the December 7 Opinion"), familiarity with which is assumed, directed plaintiff RLS Associates, LLC ("RLS") to post a bond for costs in the amount of $465,900 within 30 days from the date of entry of the Opinion, "failing which the Court will on defendant's application dismiss the action." *Id*. at *3. The December 7 Opinion then concluded with this statement: "Because such a dismissal would not address the merits of plaintiff's clams, it would be without prejudice." *Id*.

I freely concede that this reference to a dismissal *without prejudice*, as opposed to a dismissal

1

*with prejudice*, was made without counsel for either party having addressed that issue in their briefs or having been given an opportunity to do so before the December 7 Opinion was filed. The question now arises whether that statement was improvidently made, a question defendant The United Bank of Kuwait, PLC ("the Bank") poses in a pending motion dated January 23, 2006 for an order dismissing the action with prejudice.

Plaintiff has not yet responded to that motion because of an uncertainty about its present representation by counsel.[1] That uncertainty is reflected by a recent exchange of letters and a telephone conference conducted by the Court on February 22, 2006. The participants in the conference were myself; my law clerk; Mr. Richard L. Swomley, the lay president of plaintiff RLS; Richard B. Feldman, an attorney; and Michael H. Smith, also an attorney. For reasons that are readily apparent, counsel for the Bank did not participate.

## II. LEGAL REPRESENTATION OF PLAINTIFF

The pertinent correspondence and the substance of the telephone conference reveal the following facts.

In late 2000 or early 2001, Mr. Swomley decided that plaintiff RLS should commence an action against the Bank. RLS retained the firm of Spitzer & Feldman, P.C. ("the Spitzer firm") to represent it. Mr. Swomley came to the Spitzer firm because he knew a partner, James Spitzer, Jr. However, the litigation was handled principally by Ronald J. Offenkrantz,[2] another partner in the Spitzer firm, and by Mr. Smith, then an associate at the firm. Mr. Swomley says that RLS

---

[1] Plaintiff, being a corporation, cannot under familiar principles appear *pro se*. It must appear through counsel.

[2] Indeed, Mr. Offenkrantz's name appears on the complaint which was filed on February 21, 2001.

2

and the Spitzer firm executed an engagement agreement at that time, although he does not presently have a copy.

The litigation went forward. I need not recite its history in detail. In late 2003 the Spitzer firm dissolved. Mr. Spitzer is now a partner at the New York office of the Tampa-headquartered firm of Holland & Knight. Mr. Smith moved as an associate to another firm and then relocated to his present New York firm, Rosenberg Feldman Smith, LLP ("the Rosenberg firm").[3]

Mr. Smith stated during the conference that after the Spitzer firm dissolved, he was engaged and paid by former partners of that firm (Messrs. Spitzer, Offenkrantz, and Thomas R. Westle) "to undertake specific, discrete tasks" in connection with RLS's action against the Bank. Mr. Smith then moved to the Rosenberg firm. Mr. Feldman of that firm says in a letter to the Court dated February 2, 2006 (with copies to, *inter alia*, Messrs. Spitzer, Offenkrantz and Westle) that "[o]ur firm was retained by Spitzer and Feldman solely to assist Spitzer and Feldman, the attorneys of record for the plaintiff, in opposing the defendant's renewed motion for a bond decided by Your Honor in December, 2005."[4] Mr. Feldman's letter says further, without contradiction by Mr. Swomley during the telephone conference, that the Rosenberg firm "[was] not retained for any other purpose nor have we ever entered into any engagement agreement with the plaintiff in this matter."

In these circumstances, the question arises as to plaintiff's present legal representation, in the particular context of opposing or responding to defendant's motion for an order of dismissal

---

[3] The name partner in the Rosenberg firm, Richard B. Feldman, is a different attorney from the partner of that name in the Spitzer firm.

[4] This was the December 7 Opinion.

with prejudice. For the reasons that follow, I conclude that the professional and ethical responsibility for that representation must fall upon the former equity-holding partners of the Spitzer firm.

The core question presented is the obligation *vel non* of the partners of a dissolved law firm to protect the interests of clients in litigation commenced prior to the dissolution. Surprisingly, neither the Code of Professional Responsibility adopted by the Appellate Divisions of the New York Supreme Court nor the New York Partnership Law squarely address this question. However, considering that the mission of lawyers is to serve those persons or entities they accept as clients, one feels intuitively that the obligation of a partner of a law firm to an existing client should not lapse with the subsequent dissolution of the firm; and in fact a former partner's ethical obligation to a pre-dissolution client finds expression in commentaries and case law. In NYC Eth. Op. 1988-4, 1988 WL 490014 (N.Y.C. Ass'n B. Comm. Prof. Jud. Eth. June 3, 1988), the Committee on Professional and Judicial Ethics of the Association of the Bar of the City of New York, construing certain provisions of the Code of Professional Responsibility, said:

> Lawyers, therefore, have an ethical obligation to perform professional services they contract to provide until their completion, absent good cause for withdrawal. Even in the event of dissolution, every member of a law firm retained by a client is obligated to fulfill the retainer agreement.

1988 WL 490014, at *2. One of the cases the Committee cited for those propositions is *Vollgraff v. Block*, 458 N.Y.S.2d 437 (Sup. Ct. Suffolk Cty.1982), an action for legal malpractice. In 1976 the plaintiffs were involved in a car accident. That year they retained a law firm to prosecute their case against two entities. Later in 1976 the partnership was dissolved, no successor firm was formed, and "each of the partners went in different directions." *Id*. at 438. The attorneys

4

failed to file a timely suit on plaintiffs' behalf and plaintiffs sued the former partners of the firm for malpractice. The court, rejecting a motion to dismiss the complaint, held that plaintiffs' claim was viable because it rested upon the former partners' continuing professional obligations:

> Partnership dissolution doers not discharge a partner from obligations existing prior to dissolution, but only as to obligations arising after dissolution. It is apparently movant's argument that dissolution of the firm releases him from any liability in malpractice occurring after dissolution with respect to the firm's clients. As to ordinary business relationships between partnerships and third persons, this may be so. However, the relationship between a law partnership and its clients is not an ordinary business relationship, it is a fiduciary relationship and requires a high degree of fidelity and good faith . . . . [T]he Court holds that mere dissolution of the defendants' law partnership was ineffective to terminate the partners' obligations as attorneys toward partnership clients.

*Id*. at 440 (citations omitted).

The Ethics Committee's opinion focuses upon a retainer agreement between a client and the subsequently dissolved firm; the court in *Vollgraff* derived its perceived professional duty from more generalized considerations. Both analyses appear to apply to the case at bar. Mr. Swomley stated during the conference that RLS and the Spitzer firm executed a retainer agreement before the firm commenced the action, and that plaintiff had complied with all its terms; there is no present indication to the contrary, and the Spitzer firm did not apply to the Court for leave to withdraw prior to its dissolution in 2003.[5] In the Ethics Committee's view, which I share, such a retainer agreement remains in effect notwithstanding the dissolution of the Spitzer firm, and the former partners of the firm are obligated to continue protecting RLS's legal

---

[5] Local Civil Rule 1.4 provides that "[a]n attorney who has appeared as attorney of record for a party may be relieved or displaced only by order of the court," and goes on to describe the manner in which an application for leave to withdraw must be made.

5

interests in accordance with its terms. But even if no written agreement was executed at the time of the Spitzer firm' retention by RLS, that retention brought into existence an attorney-client relationship and the continuing fiduciary duties to the client borne by the former partners after dissolution that the court described in *Vollgraff*, a decision with which I also agree. However, I regard that rationale as no more than an alternative, since the evidence to date indicates the existence of a retainer agreement between RLS and the Spitzer firm.

It follows that the former partners of the Spitzer firm are obligated to continue to represent, or to arrange for the representation, of RLS in this case. Specifically, that involves responding to the Bank's motion for dismissal with prejudice, and to an appeal from this Court's judgment of dismissal (whichever form it takes) if RLS desires to prosecute an appeal.[6]

It is now necessary to comment upon the Bank's motion for an order dismissing RLS's complaint with prejudice.

### III. THE BANK'S MOTION TO DISMISS THE ACTION WITH PREJUDICE

The Bank's motion for dismissal with prejudice is based upon Fed. R. Civ. P. 41(b), which provides in pertinent part for an involuntary dismissal of an action for failure of a plaintiff "to comply with . . . any order of the court," and goes on to say that "[u]nless the court in its order for dismissal *otherwise specifies*, a dismissal under this subdivision [except for reasons inapplicable to this case] operates as an adjudication upon the merits." (emphasis added). An

---

[6] I should note, in fairness, that based upon Mr. Smith's account during the telephone conference, former members of the Spitzer firm have in the past arranged for Mr. Smith to protect the interests of RLS. That conduct on the part of the former partners is consistent with the obligations described in text, and if I understand the facts correctly, the former partners are to be commended for meeting those obligations.

"adjudication upon the merits" is, of course, the functional equivalent of an order of dismissal with prejudice. The "order of the court" with which RLS has not complied is the December 7 Opinion and Order directing the posting of security for costs.

While the Bank recognizes that even in such a case the italicized language in Rule 41(b) empowers a district court to specify that an involuntary dismissal be without prejudice ("The Court, of course, has discretion to dismiss without prejudice," Brief at 6), the Bank collects a number of cases in this circuit holding that a dismissal for noncompliance with an order directing the posting of security should be with prejudice. *See id*. Indeed, the Second Circuit case that I relied upon in the December 7 Opinion for the proposition that this Court had the discretion to dismiss RLS's action for failure to post a bond, *Atlanta Shipping Corp. v. Chemical Bank*, 818 F.2d 240 (2d Cir. 1987), *see* 2005 WL 3312004, at *3 n.4, specifically noted that upon the failure of the plaintiff to post the required bond, Judge Goettel "entered final judgment dismissing Atlanta's complaint with prejudice pursuant to Fed. R. Civ. P. 41(b)." 818 F.2d at 245.

I do not undertake to decide this question at this time, because as noted RLS has not yet had the benefit of the assistance of counsel in responding to the Bank's motion. That assistance must now be rendered in accordance with the conclusions I have reached in Part II, *supra*. It is appropriate to note, however, that the interests of RLS might best be served by a dismissal with prejudice. That possibility is suggested, perhaps as an unintended consequence, by the Bank's brief, which argues that the statute of limitations on RLS's underlying claim expired on February 13, 2006, and that "a suit dismissed without prejudice is treated for statute of limitations purposes as if it had never been filed," *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000), so that a refiling of the action would now be time barred. The Bank also argues that if the

7

dismissal is with prejudice, any refiling would be barred by *res judicata*, thereby mooting the statute of limitations. *Quaere*, however, if this Court dismisses RLS's action with prejudice for failing to post the costs bond in the amount directed, and RLS persuades the Court of Appeals that the order of dismissal was erroneous: would not the original action, timely filed, then be revived, without regard to any limitations period?

I do no more than raise these issues. They must be considered further, after counsel for RLS responds to the Bank's motion.

In these circumstances, the Court makes the following order:

1. The former partners of the law firm of Spitzer & Feldman, now dissolved, are directed, jointly and severally, to file and serve, or cause to be filed and served, on behalf of the plaintiff papers responding to the defendant's pending motion for an order of dismissal with prejudice. Such filing and service must be accomplished not later than March 24, 2006. Counsel may oppose defendant's motion on the merits; or signify the consent of RLS to the entry of an order of dismissal with prejudice, while at the same time reserving RLS's right to appeal from the order; or make such other response as they may be advised.

2. Defendant may file reply papers on or before March 31, 2006.

3. If the Court desires oral argument, counsel will be advised.

It is SO ORDERED.

Dated: New York, NY
February 24, 2006

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE