UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

RLS ASSOCIATES, LLC,　　　　　　　　　:　　　　　　01 Civ. 1290 (CSH)

　　　　　　　Plaintiff,　　　　　　　　　　:　　　　　　　　ORDER

　-against-　　　　　　　　　　　　　　　:

UNITED BANK OF KUWAIT PLC,　　　　　:

　　　　　　　Defendant.　　　　　　　　　:

--------------------------------------------------------X

HAIGHT, Senior United States District Judge:

　　　　Following the entry of the Court's Memorandum Opinion and Order reported at 2006 WL 490068 (S.D.N.Y. Feb. 27. 2006) ("the February 27 Opinion"), familiarity with which is assumed, M. James Spitzer, Esq., presently a partner in the law firm of Holland & Knight, LLP and formerly a partner in the firm of Spitzer & Feldman, P.C. ("the Spitzer firm"), wrote a letter to the Court dated March 8, 2006 ("the Spitzer letter"), with copies to all others concerned. I construe the Spitzer letter as an informal application for an extension of time within which to comply with directions contained in the February 27 Opinion and to move for reconsideration of certain of those directions. No written responses to the Spitzer letter have been received. Mr. Swomley, having received a copy of the letter, telephoned Chambers and expressed to my law clerk his uncertainty about how to proceed.

　　　　Having considered the Spitzer letter, it is apparent to the Court that a further evidentiary record must be developed with respect to the continuing legal representation of the plaintiff, RLS Associates, LLC ("RLS"). Because RLS is a corporate entity, it cannot appear *pro se*. RLS must be represented by counsel. The core question is whether any of the attorneys who have previously

1

represented RLS in this case have a professional obligation to continue doing so, or whether RLS must now make arrangements for representation by new counsel.

That question resurfaces because of certain assertions Mr. Spitzer makes in his letter.[1] Specifically, he writes that Michael H. Smith, Esq. "has been in responsible charge of handling this matter from late 2002, early 2003"; that "[a]t the time Spitzer & Feldman closed its doors in 2003 a number of matters including this one were turned over to Mr. Smith at his request and with the clients' consent to permit him to have a book of business[2] as he secured a new position"; that "[t]he complete files in this matter have, for the past three years, been in the possession of Mr. Smith" at the Todtman firm, to which he moved from Spitzer & Feldman, and "were taken with him when Messrs. Feldman, Rosenberg & Smith left Todtman and started their new firm"; that for the past three years "Mr. Smith signed all documents as counsel for RLS"; and that in a letter dated May 4, 2005, on the letterhead of Rosenberg Feldman Smith, LLP, Mr. Smith advised the Court in response to its inquiry that he was prepared to try the case on RLS's behalf and suggested that the trial take place during the week of June 13, 2005.[3]  Spitzer letter at 2.

The present state of the record is that the three former equity partners say that they cannot

---

[1] Mr. Spitzer did not participate in the February 22, 2006 conference referred to in the February 27 Opinion because he was out of the country.

[2] Mr. Spitzer's letter does not define the phrase "book of business." It is unfamiliar to the Court. I assume that Mr. Spitzer is saying that Mr. Smith wished to compile a list of clients and active cases entrusted to him, in order to favorably impress law firms in his effort to obtain a new position.

[3] A copy of Mr. Smith's May 4, 2005 letter to the Court was enclosed with Mr. Spitzer's letter. For reasons that need not be related, the case did not go to trial in June 2005, as suggested by Mr. Smith.

handle RLS's case[4] and the Rosenberg Feldman Smith firm, where Mr. Smith is now practicing, says it will not do so. But these protestations and preferences do nothing to alter the Court's holdings in the February 27 Opinion that (1) an attorney or a law firm that entered into an attorney-client relationship owes a fiduciary duty of representation to the client until relieved of professional responsibility by an order of the Court and (2) that duty survives the subsequent dissolution of a law firm, the duty then passing to the former equity partners. The Spitzer letter says at 3 that "there was no written retainer agreement with Mr. Swomley," which differs from Swomley's recollection expressed during the conference, but the absence of a written retainer does not change the fact that the Spitzer firm signed RLS's complaint, thereby becoming counsel of record and signifying the existence of the attorney-client relationship and its accompanying ethical responsibilities.

The question that arises from the Spitzer letter is whether Mr. Smith undertook to assume the professional responsibilities inherent in an attorney-client relationship between himself and RLS, thereby relieving the former equity partners of the Spitzer firm of those responsibilities. No notice of substitution of counsel was filed with the Clerk of the Court, as the rules of practice require, but I do not doubt my supervisory power to hold, if the facts support the conclusion, that a substitution of counsel took place *de facto* if not *de jure*. Such a holding, if made, would leave the continuing duty of representation with Mr. Smith.

In order that the facts may be further developed, Mr. Smith is directed to file an affidavit, with copies to all interested persons and entities (except to counsel for defendant) commenting upon the pertinent assertions in the Spitzer letter. Specifically, Mr. Smith is directed to describe in detail

---

[4] Mr. Spitzer says in his letter at 1: "Spitzer & Feldman as a firm no longer exist and none of its former partners has the capacity to handle this matter."

the circumstances under which he assumed his representation of RLS, a representation that, as the Court records show, existed as late as June 2005, when Mr. Smith was asking the Court to set the case down for trial. That affidavit must be filed and served not later than March 29, 2006.

As for Mr. Spitzer, he is directed to file and serve (again except for counsel for defendant) an affidavit on or before March 29, 2006 recounting in detail the manner in which the Spitzer firm came to be retained on behalf of RLS, the pertinent dates and substances of any conversations, and the details, terms and conditions of the firm's retainer agreement with RLS and/or Swomley. While as noted the Spitzer letter says that "there was no written retainer agreement," it then acknowledges that the Spitzer firm "agreed to take the matter on a contingent basis," and adds that "there was no discussions [*sic*] with regard to Appellate review or the extent of any services we would render." *Id*. at 3. That latter assertion is apparently in aid of an argument the former Spitzer partners may make that the firm's contingent retainer agreement obligated the firm to try the case but not to prosecute appeals, including the potential appeal that may be taken from this Court's order requiring RLS to post security for costs. Whether that argument is well founded would depend, it would seem, upon the terms on which the Spitzer firm "agreed to take the matter on a contingent basis." Conceptually, one supposes, an attorney can agree with a client that the attorney's representation and attendant professional responsibility are limited to a trial and exclude any or all appeals; but if the agreement is simply for representation on a contingent fee basis, without any such limitation, one would think that the attorney cannot abandon the client at the door of the court of appeals. I do not undertake to decide the question in this case because the record is not complete and the issue has not been briefed. The purpose of the Spitzer affidavit herein required is to complete the record in this regard.

Mr. Swomley will be receiving copies of the Smith and Spitzer affidavits. He is directed to submit an affidavit of his own, responding to or commenting upon the assertions in either or both affidavits, not later than April 12, 2006.

All proceedings in the case are stayed pending the Court's consideration of this additional material and its further Order.

It is SO ORDERED.

Dated: New York, NY
March 17, 2006

_____
CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE