```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
RLS ASSOCIATES, LLC,                              :
                                                  :
                       Plaintiff,                 :       01 Civ. 1290 (CSH) (DF)
                                                  :
        -against-                                 :
                                                  :       MEMORANDUM OPINION
UNITED BANK OF KUWAIT PLC,                        :            AND ORDER
                                                  :
                       Defendant.                 :
--------------------------------------------------------------- x
```

HAIGHT, Senior District Judge:

      Defendant United Bank of Kuwait PLC ("UBK" or "the Bank") has filed a motion for reconsideration of the Court's Memorandum Opinion and Order dated November 27, 2006 ("the November 27 Opinion"). The November 27 Opinion, familiarity with which is assumed, is reported at 2006 WL 3421744 (S.D.N.Y. Nov. 27, 2006). In the November 27 Opinion, the Court denied UBK's motion to dismiss for plaintiff RLS Associates, LLC's ("RLS") failure to post a bond to secure costs and attorneys' fees. The Court found that the English Rule on attorneys' fees applied to this case and that UBK was entitled to a bond under Local Rule 54.2, but that the bond amount required of RLS should be reduced from $469,500 to $75,000.[1] In addition, the Court directed UBK to post a bond in the amount of $75,000.

      Pursuant to Local Rule 6.3, the Bank now moves for reconsideration of the November 27 Opinion insofar as it reduced the bond required of RLS to $75,000. For the reasons below, the Bank's motion for reconsideration is denied.

---

[1] The Court's December 7, 2005 Order had previously set the bond amount required of RLS at $469,500. *See* 2005 WL 3312004, at *2 (S.D.N.Y. Dec.7, 2005).

## I. BACKGROUND

The November 27 Opinion revisited several issues that had been addressed and answered in prior Opinions; the Court explained that "the Chancellor in Equity should never shrink from changing a prior ruling if the fairness of the proceeding is enhanced thereby." 2006 WL 3421744, at *2 n.3 (S.D.N.Y. Nov. 27, 2006). However, the Bank indicates that it relied on prior decisions of the Court to its detriment. In particular, UBK contends that it did not address whether the bond amount should be reduced based on the merits of the case because prior Opinions had indicated that the Bank's entitlement to a bond was settled, and that the issue at hand was the plaintiff's financial ability to post security for costs. There is some force to this procedural grievance. Accordingly, the Court will relax the strictures that usually limit motions for reconsideration, *see, e.g., Koehler v. Bank of Bermuda Ltd.*, 2005 WL 1924746, at *1 (S.D.N.Y. Aug. 10, 2005), and will carefully review the arguments raised by the Bank in its motion for reconsideration.

The November 27 Opinion reduced the bond amount required of RLS to $75,000 in light of equitable considerations, including RLS's "legitimate interest in obtaining its day in court on a claim whose potential merit has been attested to, at least in part, by the Second Circuit." 2006 WL 3421744, at *14 (S.D.N.Y. Nov. 27, 2006). The Bank argues that this reduction was mistaken for several reasons. First, the Bank argues that the Second Circuit decision did not address the merits of the underlying claim because it did not analyze the Bank's prejudice defense. The Bank contends that "[t]he decision to remand the case for trial means there are unresolved issues of fact — and nothing more." Def. Mem. in Supp. of Mot. for Recons. ("Def. Mem.") at 4. Second, the Bank cites documentary evidence before the Court that supports the Bank's prejudice defense. RLS's right to post-termination commissions was conditioned on RLS refraining from actions that the Bank

reasonably believed were prejudicial to its interests. The Bank describes harms that it allegedly suffered as the result of critical statements made by Richard Swomley. Third, the Bank argues that directing both parties to post a $75,000 bond did not put the parties on equal footing because "the Bank will only be able to collect $75,000 in fees, or about fifteen cents on the dollar, if it is successful" while "RLS . . . will be able to collect a hundred cents on the dollar if it prevails." Def. Mem. at 7. The Bank contends that "[b]y reallocating the risk of litigation, the Court has effectively rewritten the contract of the parties." *Id.*

## II. DISCUSSION

### A.  District Court's Discretion Over Bond Amount

At the outset, I note that the district court enjoys considerable discretion in setting a bond amount under Rule 54.2. The text of the rule states that "[t]he court, on motion or on its own initiative, may order any party to file an original bond for costs or additional security for costs *in such an amount . . . as it may designate*." S.D.N.Y. Local Civ. R. 54.2 (emphasis added). Based on this text, the bond amount presumably may not exceed the potential costs and fees in the case. In addition, under *Selletti v. Carey*, 173 F.3d 104 (2d Cir. 1999), the court should not impose a bond that a party is unable to pay, thereby depriving the party of its day in court. Subject to these upper-bound limitations, the amount of the bond lies within the district court's discretion, informed by both legal and equitable considerations.

In particular, if a district court determines that a cost bond is appropriate under Rule 54.2, the court is not required to set the bond amount at the *full* amount of costs and fees at stake. Rather, the court is entitled to set the bond at an intermediate amount, as justified by the circumstances. *See, e.g., Selletti v. Carey*, 173 F.3d 104, 111 n.9 (2d Cir. 1999) ("if a court sets [a bond] amount that

3

proves to exceed the party's ability to pay, the court retains the option of accepting partial . . . payment"); *Bressler v. Liebman*, 1997 WL 466553 (S.D.N.Y. Aug. 14, 1997) (setting bond amount at $50,000 under Local Rule 54.2, where defendant estimated $100,000 in costs and attorneys' fees); *Mann v. Levy*, 776 F. Supp. 808 (S.D.N.Y. 1991) (setting cost bond at $10,000 under Local Rule 39, the predecessor of Local Rule 54.2, where defendants indicated costs of at least $20,000); *Beverly Hills Design Studio (N.Y.) Inc. v. Morris*, 126 F.R.D. 33 (S.D.N.Y. 1989) (setting bond amount at $20,000 under Local Rule 39 where defendant estimated $100,000 in costs and attorneys' fees). In the case at bar, there is ample justification for the Court to reduce the bond amount from the full amount of costs and fees.

**B.      Factors Affecting Bond Amount**

In the November 27 Opinion, the Court recognized that "the Bank has a legitimate interest in recovering costs and fees if it prevails in the litigation." 2006 WL 3421744, at *14 (S.D.N.Y. Nov. 27, 2006). The Bank has estimated the full amount of costs and fees it could recover under English law as $469,500, a calculation supported by credible English experts.[2] But competing equitable factors justify a significantly lower bond amount.

**1.      Potential Merit**

The potential merit of RLS's claim justifies a reduced bond amount. The Second Circuit

---

[2] This observation does not necessarily mean that the Court has decided to award that amount if UBK prevails on the suit. This Court may assess the reasonableness of any claimed amount for attorneys' fees. *See, e.g.*, *Bensen v. Am. Ultramar Ltd.*, 1997 WL 317343, at *7 (S.D.N.Y. June 12, 1997) (under the English rule, "judges have a discretionary power to deprive the winner of all or part of the costs if they think that he is to be criticized in the way in which he has conducted the case or if he has won on one issue and failed on another separate issue, a consideration of which has increased the overall costs," quoting Theodore R. Tetzlaff, "The English Rule from the English Perspective," 18 Litig. 1, 2 (Summer 1992)).

opinion in this case, reported at 380 F.3d 704 (2d Cir. 2004), establishes that RLS has a potentially meritorious claim. The opinion did much more than simply find the presence of unresolved questions of fact, as the Bank contends. Rather, the Second Circuit also made legal findings in RLS's favor when it: (1) concluded that the November Amendment, which established the post-termination commissions, was supported by adequate consideration, (2) concluded that the November Amendment did not impose obligations on the Asset Managers without their consent, and (3) suggested that November Amendment probably did not require the signatures of the Asset Managers. *Id.* at 707-13. In these respects, RLS's claim "has already been significantly tested in the appellate fire." 2006 WL 3421744, at *15 (S.D.N.Y. Nov. 27, 2006). The Bank correctly observes that the Second Circuit opinion did not address the Bank's prejudice defense, which this Court previously determined was a "fact-intensive question appropriate for jury resolution." 2003 WL 22251332, at *7 (S.D.N.Y. Sept. 30, 2003). I express no opinion on the ultimate resolution of the prejudice defense, but note that UBK bears the burden of proof on this affirmative defense at trial.

As stated in the November 27 Opinion, "the merits of the underlying claims are routinely considered in determining *whether* to require a bond under Rule 54.2, and there is no reason why this factor may not also affect the *amount* of the bond." 2006 WL 3421744, at *15 (S.D.N.Y. Nov. 27, 2006). Based on the circumstances described above, I conclude that the potential merit of RLS's claim justifies a reduction in the bond amount from the full amount of fees and costs.

### 2. RLS's Interest in Obtaining a Trial

RLS has a legitimate interest in obtaining its day in court on a potentially meritorious claim, and the bond should not be used to impose financial burdens on the Swomleys that prevent the trial from occurring. The financial statements indicate that Richard Swomley possesses about $1 million

in investment and retirement accounts, with an after-tax value of about $600,000. 2006 WL 3421744, at *2 (S.D.N.Y. Nov. 27, 2006). Thus, *Selletti* — which prevents a court from imposing a bond that the party is unable to pay — does not compel this Court, as a matter of law, to reduce the bond amount from $469,500. Nonetheless, the Court may, in the exercise of its discretion, reduce the bond amount so that it does not seriously impede the plaintiff's ability to prosecute the action. *See, e.g.*, *Atlanta Shipping Corp. v. Chem. Bank*, 818 F.2d 240, 251-52 (2d Cir. 1987). In this case, I find that the original $469,500 bond amount, which exceeds three-quarters of Richard Swomley's after-tax assets, would impose severe financial burdens that would impede RLS's ability to maintain the action. Furthermore, the financial statements also indicate that Richard Swomley and Elaine Swomley have a combined negative net income of about $200,000 in 2006. Under these circumstances, the financial condition of the Swomleys justifies a reduction in the bond amount from the full amount of fees and costs.

### 3. Factors Weighing Against a Bond

The November 27 Opinion recognized that several factors, in addition to the potential merit of RLS's claim, weighed against requiring a bond in the first place. The Court noted that: "At the outset, three . . . factors appear to militate against requiring a bond. Plaintiff is not a non-resident or foreign corporation, there is no history of noncompliance with prior orders, and the extent and scope of discovery in this case, while perhaps extensive, is not particularly unusual in its magnitude." 2006 WL 3421744, at *11 (S.D.N.Y. Nov. 27, 2006) (quoting 2005 WL 578917, at *1 (S.D.N.Y. Mar. 11, 2005)). Although the Court ultimately concluded that a bond was appropriate, these factors justify a reduction in the bond amount from the full amount of fees and costs.

C.  **Additional Equitable Arguments**

1.  **"Rewriting the Contract"**

The Bank contends that "[b]y reallocating the risk of litigation, the Court has effectively rewritten the contract of the parties." Def. Mem. at 7. This argument is without merit. The contract at issue is between UBK and RLS; the breach of contract lawsuit is between UBK and RLS. If the Bank prevails in the litigation, the contract between the parties would allow the Bank to obtain a judgment for costs and attorneys' fees against RLS. If UBK seeks to enforce this judgment against the *Swomleys*, it must pierce the corporate veil of RLS, a limited liability company — and the contract does not provide otherwise.

Indeed, the contract says nothing about a security bond. Accordingly, the Court's resolution of the bond issue does not, and could not, rewrite or alter the parties' contract. Rather, the bond is a matter of federal procedural law under Local Rule 54.2, and arises out of the Court's equitable authority to manage the litigation. In this capacity, the Court determined that Richard Swomley must post a bond of $75,000 if RLS wants a chance to obtain the fruits of litigation. This determination in no way rewrites the contract between the parties; in fact, the bond provides the Bank with benefits beyond its contractual rights. Based on the contract, the Bank would have to pierce the corporate veil of RLS if the Bank wanted to reach *any* assets held by the Swomleys. If Richard Swomley posts the bond required by the Court, however, the Bank will be assured of recovering $75,000 if it prevails in the litigation — even if it is never able to pierce the corporate veil of RLS.

2.  **"Equal Footing"**

The Bank argues that directing both parties to post a $75,000 bond did not put the parties on equal footing because the Bank will only be able to collect fifteen cents on the dollar if it is

successful, while RLS will be able to collect a hundred cents on the dollar if it prevails. This argument is unpersuasive for two reasons.

First, much of this percentage disparity appears due to the tremendous amount of attorneys' fees expended by the Bank on this case — about $469,500 in attorneys' fees (in a case where the underlying claim is about $275,000). In actual dollar terms, the disparity between the amount of attorneys' fees that UBK might recover through the bond and the amount of fees that RLS might recover from UBK appears more modest. If we roughly estimate the reasonable amount of attorneys' fees incurred by RLS to be about one-third of the underlying claim amount, then the $75,000 in attorneys' fees that the Bank could collect through the bond would be over eighty percent of the $90,000 in attorneys' fees that RLS could recover from the Bank.[3]

Second, any percentage disparity in recovery only relates to the amount the Bank can collect *directly through the bond*. Even if the Bank can only collect "fifteen cents on the dollar" through the bond, the Bank is free to pursue the remaining eighty-five cents on the dollar by attempting to pierce the corporate veil of RLS to reach the Swomley's assets.

### III. CONCLUSION

For the foregoing reasons, the Court adheres to the $75,000 bond amount established in the November 27 Opinion. Defendant UBK's motion for reconsideration is denied.

---

[3] Of course, the total dollar amount recoverable by RLS if it prevails would include damages for the underlying claim (and interest) in addition to its attorneys' fees and costs. But for the purposes of litigation symmetry, it seems appropriate to compare the costs and fees recoverable by UBK with the costs and fees recoverable by RLS. The plaintiff's potential recovery of damages for its underlying claims creates a natural asymmetry where the defendant asserts no counter-claims.

9

It is SO ORDERED.

Dated: New York, New York
December 18, 2006

_____
CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE